IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LILLIAM MALDONADO CORDERO, et al.    *
                                    *
       Plaintiffs    *
                                      *
vs.    *    CIVIL NO. 98-2386 (JP)
                                      *
AT&T, et al.    *
                                      *
       Defendants    *
                                      *

RECEIVED & FILED
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN PR
1999 NOV -3 PM 4: 32

### OPINION AND ORDER

## I.    Introduction and Background

The Court has before it co-Defendants AT&T of Puerto Rico, Inc. ("AT&T-PR"), Richard Luna, and Luis Figueroa's Motion to Dismiss and Memorandum of Law in Support Thereof (**docket No. 11**), Plaintiffs' Motion in Opposition to Codefendants' Motion to Dismiss (docket No. 26), and Defendants' Reply thereto (docket No. 31).

Plaintiffs Lilliam Maldonado-Cordero ("Maldonado"), María M. Lazo-Macías ("Lazo"), Carmen H. Lázaro-Vicens ("Lázaro"), their respective husbands, Carlos Alberto Mercado-Rivera, Carlos Marce-Fajardo, and José Angel Rodríguez-Montes, and the conjugal partnerships constituted between them, filed a Complaint on December 22, 1998, bringing claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e-15; the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 215-217; and Puerto Rico's Law No. 100, P.R. Laws Ann. tit. 29 § 146; Law No. 69, P.R. Laws Ann. tit. 29 § 1321; Law No. 17, P.R.

CIVIL NO. 98-2386 (JP)                    2

Laws Ann. tit. 29 §§ 155-1551; Law No. 3, P.R. Laws Ann. tit. 29 § 467; Law No. 80, P.R. Laws Ann. tit. 29 § 185(a); and Articles 1802 and 1803 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31 §§ 5141, 5142.

Plaintiffs Maldonado, Lazo, and Lázaro all allege that they were discriminated against by AT&T, AT&T-PR, José Felipe ("Felipe"), former President of AT&T-PR, Richard Luna ("Luna"), AT&T-PR Director of Sales and Marketing (and Maldonado's individual supervisor), and Luis Figueroa ("Figueroa"), Human Resources Director of AT&T-PR, on the basis of gender in violation of Title VII, and that they were compensated less than similarly qualified men in similar positions in violation of the Equal Pay Act and the Fair Labor Standards Act ("FLSA"). Co-plaintiffs Maldonado and Lazo also claim unjustified dismissal in contravention of Law 80 of Puerto Rico. The husbands of Maldonado, Lazo, and Lázaro seek relief under Articles 1802 and 1803 of the Civil Code of Puerto Rico for damages caused to them by Defendants' tortious actions against their wives.

## II.  DISCUSSION

### A.  Plaintiffs' Allegations

The Complaint states that Plaintiffs Maldonado, Lazo, and Lázaro, all married women with children, worked for AT&T-PR in the sales and marketing division. Plaintiffs allege that they "have been

CIVIL NO. 98-2386 (JP)                3

the victims of continuous discriminatory practices and policies"
against women in general, women with children and/or spouses, and
pregnant women.  (Compl. ¶¶ 18, 21).  The Complaint avers that:

> male co-workers who performed less effectively constantly
> received unfounded excellent evaluations, preferential
> treatment in assignment of clients, and territories, and
> opportunities for career advancement and promotions . . . .
> Male employees were given the best territories and were paid
> commissions which had been previously denied to plaintiffs and
> other women in the same positions.

(Compl. ¶ 19).

Maldonado began her employment with AT&T-PR on August 8, 1988
as a Systems Consultant, at a salary of $28,500.00 per year and a
salary grade of SG-04.  At some unspecified time after August 1988,
Maldonado was promoted to the position of Account Executive without
a raise in salary or salary grade, and assigned the work previously
performed by two male account executives.  The two male account
executives whose work was assigned to Maldonado earned annual
salaries of $40,000.00 and $56,000.00.

In both 1993 and 1994, Maldonado was promoted and received
salary grade increases.  Maldonado was promoted twice in 1996, to
Strategic Alliances Manager and then to Business Sales Manager for
Major Accounts Group, without an increase in annual salary or salary
grade.  As Business Sales Manager for Major Accounts Group, Maldonado
reported to the Director of Sales and Marketing, and supervised ten

CIVIL NO. 98-2386 (JP)                4

salespersons and a sales assistant.  During her tenure at AT&T-PR,
from August 1988 to 1997, Maldonado received good to excellent
evaluations.

The Complaint further asserts that Maldonado was subjected to
discriminatory treatment based on her sex, her status as a married
woman with children, and her pregnancy through the following
incidents:  (1) during her recruitment in 1988, an AT&T executive
asked Maldonado about her plans to have children and raise a family;
(2)  soon after Maldonado commenced employment, AT&T Sales Manager
John Acosta made sexually harassing comments towards her, which were
known and tolerated by co-Defendant AT&T; (3)  Maldonado was paid at
a lower salary and salary grade than men performing the same or
similar job with equivalent seniority; (4)  AT&T-PR imposed a dress
code barring women from wearing pants; (5)  Defendants promoted
lesser-qualified or less-senior male employees than Maldonado in
1990, 1991, 1995, 1996 and 1997; (6)  Maldonado and other women were
subjected to frequent derogatory and/or sexist remarks by higher-
ranking AT&T officers; (7)  Maldonado was passed over for the
position of Director of Sales and Marketing while on maternity leave.
Maldonado also avers generally that she suffered sexual harassment
through a work environment hostile to married women, but not married
men, and that she suffered "discriminatory, demeaning and unlawful

CIVIL NO. 98-2386 (JP)                5

conduct by AT&T officer Luna" because of her gender, which was tolerated by Figueroa. (Compl. ¶ 27).

Lazo was hired as Events Coordinator at AT&T-PR on July 5, 1988, with an annual salary of $27,000.00 and a salary grade of SG-02. Although she was given increasing responsibilities, she received inferior grade increases as compared to her male colleagues. From 1988 to 1996, Lazo received good to excellent evaluations. In 1996 and 1997, Lazo acted as both Area Manager for Business Marketing and Project Manager, supervising ten or more persons, including Luna.

The Complaint indicates that Lazo was subjected to discriminatory treatment on the basis of her gender, marital status, pregnancy, and status as a mother, as demonstrated by the following incidents: (1) in 1994 Lazo took maternity leave, but Defendants required her to continue working notwithstanding; (2) at the time of her second pregnancy, Lazo was questioned by an AT&T executive with respect to her plans to have additional children and raise a family; (3) in 1994, Lazo was passed over for a promotion or the opportunity for a promotion in favor of lesser-qualified or less senior single women; (4) in 1997, Lazo was denied the opportunity to compete for the position of Director of Sales and Marketing when that position was given to Luna; (5) after Luna became Director of Sales and Marketing, Luna subjected Lazo to difficult treatment, such

CIVIL NO. 98-2386 (JP)          6

as giving her tasks to be completed in an unreasonable amount of time; (6) Lazo was not given a salary increase on five occasions even though she received good evaluations and had the highest seniority, while all the male supervisors with less seniority were given salary increases; and (7) male employees used disrespectful and offensive language around her because of her gender. The Complaint also alleges generally that an environment hostile to married women, but not married men, existed at AT&T-PR.

Lázaro began working at AT&T-PR on July 5, 1988 as a contract employee in the marketing department. On July 10, 1989, she was promoted to Marketing Consultant and made a permanent employee. In January 1992, Lázaro was denied the opportunity for a promotion when a male colleague less qualified than Lázaro was appointed Supervisor of Special Events. After complaining to Figueroa, Lázaro was transferred to the Sales Department and named Account Executive (Compl. ¶ 37). From 1989 to 1996, Lázaro received good to excellent evaluations and received various promotions. In an October 10, 1996 meeting of the AT&T-PR sales, business marketing, and Intra-LATA team staff, attended by Lázaro, Figueroa and Luna, who was then the Area Sales Manager, Lázaro voiced concerns about the management's favoritism, hostility, and other deficiencies. Luna resigned shortly after the meeting. In July 1997, Lázaro was denied the opportunity

CIVIL NO. 98-2386 (JP)          7

to apply for the position of Director of Sales and Marketing for AT&T-PR when that position was given to Luna without a prior posting of the vacancy as is the AT&T-PR policy.

The Complaint states that upon information and belief, Felipe and Figueroa knew about and participated in the selection of Luna to occupy the position of Director of Sales and Marketing in July 1997, to the exclusion of Maldonado and Lazo.  In late August 1997, the Sales and Marketing Department of AT&T-PR was restructured.  Male managers participated in planning the restructuring, while female managers with children, including Maldonado and Lazo, were excluded from planning meetings.  After the restructuring, Maldonado was given fewer employees to work with, a less profitable and more difficult sales territory, and a higher sales quota; Lazo's administrative support was taken away from her; and Lázaro's income was substantially reduced.

As a result of the foregoing, at some unspecified date Maldonado, Lazo, and Lázaro filed internal complaints of discrimination against AT&T.  AT&T headquarters personnel from human resources department in New Jersey conducted the investigation, finding no discrimination.  Maldonado, Lazo, and Lázaro then proceeded to file administrative complaints of discrimination against AT&T before the Equal Employment Opportunity Commission and the

CIVIL NO. 98-2386 (JP)                     8

Puerto Rico Anti-Discrimination Unit (Unidad Anti-Discrimen, or
"UAD"). Lázaro filed her administrative complaint on November 18,
1997; Maldonado and Lazo both filed their administrative complaints
on November 22, 1997. On July 21, 1998, Maldonado and Lazo were
terminated without any written explanation, which Maldonado and Lazo
assert was in retaliation for complaining to the EEOC and UAD.

**B.    Standard for Motion to Dismiss**

Co-Defendants' motion alleges several grounds for the dismissal
of Plaintiffs' claims: (1) that the individual Defendants cannot
be held personally liable under Title VII; (2) that Plaintiffs
failed to exhaust administrative remedies because (a) they did not
name co-Defendants as respondents in their administrative charges,
(b) several of Plaintiffs' claims under Title VII raised in the
Complaint are not "reasonably related" to those claims raised in the
administrative charges, and (c) Plaintiffs did not raise their
retaliation claims before the EEOC; (3) that Plaintiffs' claims for
the time period preceding February 1997 are time-barred; (4) that
Plaintiffs failed to establish a prima facie case under the Equal Pay
Act; and (5) that the Court should refrain from exercising
supplemental jurisdiction over Plaintiffs' Puerto Rico law claims.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a
defendant may, in response to an initial pleading, file a motion to

CIVIL NO. 98-2386 (JP)          9

dismiss the complaint for failure to state a claim upon which relief can be granted. It is well-settled, however, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Miranda v. Ponce Fed. Bank, 948 F.2d 41 (1st Cir. 1991). The Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (citations omitted).

Although there is a low threshold for stating a claim, the pleading requirement is "not entirely a toothless tiger." Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996) (quoting The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989)). Thus, a Complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). The Court, however, need not accept a complaint's "'bald assertions' or legal conclusions" when assessing a motion to dismiss. Abbott, III v. United States, 144 F.3d 1, 2 (1st Cir. 1998) (citing Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir. 1996)).

CIVIL NO. 98-2386 (JP)                    10

In opposing a Rule 12(b)(6) motion, parties "cannot expect a trial court to do [their] homework for [them]." <u>CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.</u>, 97 F.3d 1504, 1526 (1st Cir. 1996) (quoting <u>McCoy v. Massachusetts Inst. Of Techn.</u>, 950 F.2d 13, 22 (1st Cir. 1991)); <u>Santiago v. Lloyd</u>, 33 F. Supp.2d 99, 101 (D. Puerto Rico 1998) (Pieras, J.). Rather, the plaintiff has an affirmative responsibility "to put her best foot forward in an effort to present a legal theory that will support her claim." <u>McCoy</u>, 950 F.2d at 23. A Plaintiff must set forth in her complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." <u>Romero-Barcelo v. Hernández-Agosto</u>, 75 F.3d 23, 28 n. 2 (1st Cir. 1996) (quoting <u>Gooley</u>, 851 F.2d at 514).

   C.   **Individual Liability under Title VII**

Defendants argue that there is no personal liability under Title VII, and thus, that the claims against Plaintiffs' individual supervisors in their personal capacities should be dismissed. Neither the First Circuit nor the Supreme Court has decided the issue of whether a Title VII plaintiff can maintain a suit against an individual in their personal capacity. See <u>Serapión v. Martínez</u>, 119 F.3d 982, 992-93 (1st Cir 1997) (citing <u>Scarfo v. Cabletron Sys., Inc.</u>, 54 F.3d 931, 951-52 (1st Cir. 1995)) (declining to address the

CIVIL NO. 98-2386 (JP)          11

issue of individual liability). The issue, however, has created a split among other circuits, with the majority concluding that there is no individual liability under Title VII.[1] Along with the First Circuit, the Third, Sixth, and Eighth Circuit Courts of Appeals have not ruled on the issue of individual liability. District courts within this Circuit have rendered conflicting opinions.[2]

In deciding to hold individuals liable for their acts of discrimination or harassment, courts have looked at the plain

---

[1] The Second, Seventh, Ninth, Tenth, Eleventh, and District of Colombia Circuit have determined that supervisors may only be held individually liable in their official capacities. See Tomka v. Seiler Corp., 66 F.3d 1295, 1313-17 (2d Cir. 1995); Williams v. Baning, 72 F.3d 552, 553-55 (7th Cir. 1995); Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587-88 (9th Cir. 1993); Haynes v. Williams, 88 F.3d 898, 900-01 (10th Cir. 1996); Cross v. Alabama, 49 F.3d 1490, 1504 (11th Cir. 1995); Gary v. Long, 59 F.3d 1391, 1399 (D.C. Cir. 1995). The Fourth Circuit, however, has permitted individual supervisors to be held liable in their personal capacities when a supervisor "exercises significant control over the plaintiff's hiring, firing or conditions of employment." Paroline v. Unisys Corp., 879 F.2d 100, 104 (4th Cir. 1989) (citations omitted), rev'd in part, aff'd in relevant part, 900 F.2d 27 (4th Cir. 1990) (en banc).

[2] Some courts have found individual liability under Title VII, see Iacampo v. Hasbro Inc., 929 F. Supp. 562, 571-72 (D.R.I. 1996); Weeks v. State of Maine, 871 F. Supp. 515, 516-17 (D. Maine 1994); Douglas v. Coca-Cola Bottling Co. of Northern England, Inc., 855 F. Supp. 518-20 (D.N.H. 1994), while others have rejected individual liability, see Hernández v. Wangen, 938 F. Supp. 1052, 1063-65 (D. Puerto Rico 1996); Anonymous v. Legal Serv. Corp., 932 F. Supp. 49, 50-51 (D. Puerto Rico 1996); Miller v. CBC Companies, Inc., 908 F. Supp. 1054, 1065 (D.N.H. 1995).

CIVIL NO. 98-2386 (JP)                    12

language of Title VII itself, see <u>Paroline v. Unisys Corp.</u>, 879 F.2d 100, 103 (4th Cir. 1989), which defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . ., *and any agent of such person*. . ." 42 U.S.C. § 2000e(b) (emphasis added). In addition, courts have taken into account the remedial goals of Title VII in deciding to hold individuals liable. See <u>Weeks v. State of Maine</u>, 871 F. Supp. 515, 516-17 (D. Maine 1994) ("to effectuate [Title VII's] goals and purpose of eradicating the evils of employment discrimination, Title VII should be given a liberal construction").

On the other hand, courts that have found no individual liability under Title VII have looked to Title VII's overall language as well as its legislative history. See <u>Hernández v. Wangen</u>, 938 F. Supp. 1052, 1064 (D. Puerto Rico 1996) ("As it had with other civil rights statutes such as section 1981, Congress could have included individuals like supervisors as potential liable parties.") (footnote omitted); <u>Miller v. Maxwell's Int'l, Inc.</u>, 991 F.2d 583, 587 (9th Cir. 1993) ("[T]he obvious purpose of this agent provision was to incorporate respondeat superior liability into the statute.").

This Court agrees that Title VII's language and legislative history do not support holding individuals liable under the statute. This District has previously addressed the question of individual

CIVIL NO. 98-2386 (JP)          13

liability under Title VII, dismissing a plaintiff's claim against a defendant in his personal capacity. Hernández, 938 F. Supp. at 1065. Refusing to "stretch the definition of 'employer' of Title VII and the Civil Rights Act of 1991 beyond Congress' intent," the court found that "individual defendants . . . are not liable under Title VII." Id. For the reasons set forth above, the Court hereby **DISMISSES WITH PREJUDICE** Plaintiffs' Title VII claims against co-Defendants Luna and Figueroa.    In addition, because this Court previously has held that there is no individual liability under Puerto Rico Law 100, Canabal v. Aramark Corp., 48 F. Supp.2d 94 (D. Puerto Rico 1999) (Pieras, J.), Plaintiffs' state law claims against Luna and Figueroa are also **DISMISSED WITH PREJUDICE.**

D.    **Exhaustion of Administrative Remedies**

As a prerequisite to filing suit in federal court, a Title VII plaintiff must set forth the acts complained of in a timely charge filed with the EEOC. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 94 S. Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 127 (7th Cir. 1989).    The filing of an administrative charge affords the EEOC an opportunity to promote the settlement of a dispute before the parties resort to litigation. See Patterson v. McLean Credit Union, 491 U.S. 164, 180-81, 109 S. Ct. 2363, 2374-75, 105 L.Ed.2d 132 (1989).    Compliance

CIVIL NO. 98-2386 (JP)                    14

with the timely charge requirement before the EEOC is not, however, a jurisdictional prerequisite to filing a Title VII suit. <u>See Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393, 102 S. Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). Rather, it is in the nature of a "requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." <u>Id.</u> at 393, 102 S. Ct. at 1132, 71 L.Ed.2d 234. The courts, therefore, have treated the timely charge requirement as a condition precedent to bringing suit before a federal court. <u>See Babrocky v. Jewel Food Co.</u>, 773 F.2d 857, 862 (7th Cir. 1985).

Co-Defendants move to dismiss, as a deficiency in subject matter jurisdiction pursuant to Rule 12(b)(1), several of Plaintiffs' claims before this Court which co-Defendants contend were not raised in the EEOC charges. In <u>Zipes</u>, the U.S. Supreme Court addressed the issue of whether failure to timely file an EEOC charge barred a plaintiff from bringing suit in the district court. <u>See Zipes</u>, 455 U.S. at 393, 102 S. Ct. at 1132, 71 L.Ed.2d 234. Subsequent cases, however, have found that the holding of <u>Zipes</u> applies equally when a party challenges the jurisdiction of a court to address claims outside the scope of a timely filed EEOC charge. <u>See McKinnon v. Kwong Wah Restaurant</u>, 83 F.3d 498, 505 (1st Cir. 1996) ("We conclude that the charging requirement is nonjurisdictional, thus subject to waiver,

CIVIL NO. 98-2386 (JP)                    15

estoppel and equitable tolling."); Babrocky, 773 F.3d at 863.  Thus,

co-Defendants' argument does not go to the subject matter

jurisdiction of the Court, but rather the sufficiency of the claim

made out by Plaintiffs.  Thus, the Court will treat co-Defendants'

motion as a motion to dismiss for failure to state a claim upon which

relief may be granted pursuant to Rule 12(b)(6).  See id.

Although consideration of a Rule 12(b)(6) motion to dismiss is

generally limited to the facts stated on the face of the complaint,

a court may also consider documents appended to the complaint,

documents incorporated by reference, and matters of which judicial

notice may be taken.  See Allen v. WestPoint-Pepperell, Inc., 945

F.2d 40, 44 (2d Cir. 1991); James W. Moore, 2 Moore's Federal

Practice § 12.34[2] (3d ed. 1998).  Plaintiffs' EEOC charges may be

considered either as a matter referenced in the complaint or as a

public record subject to judicial notice.  See Mack v. South Bay Beer

Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (holding that

court may take judicial notice of records and reports of

administrative bodies without converting a motion to dismiss into one

for summary judgment), overruled on other grounds by Astoria Fed.

Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 111 S. Ct. 2166, 115

L.Ed.2d 96 (1991); Dixon v. Philadelphia Housing Authority, 43 F.

Supp.2d 543, 545 (E.D. Pa. 1999) (holding that court may consider

CIVIL NO. 98-2386 (JP)                16

EEOC charge without converting Rule 12(b)(6) motion into motion for

summary judgment); <u>Nickens v. New York State Dept. of Correctional</u>

<u>Servs.</u>, No. 94 CV 5425(FB), 1996 WL 148479, *1 (E.D.N.Y. 1996)

(holding that a court may take judicial notice of EEOC filings);

<u>Gallo v. Board of Regents of Univ. of Cal.</u>, 916 F. Supp. 1005, 1007

(S.D. Cal. 1995) (holding that a court may consider EEOC charge and

right-to-sue letter in deciding a motion to dismiss either as a

matter attached to the complaint or as records subject to judicial

notice).   Thus, the Court may consider the EEOC charges without

converting the motion to dismiss into a motion for summary judgment.

### 1.    The charging requirement

Defendants suggest that because Plaintiffs did not identify

AT&T-PR and each individual Defendant in the appropriate box on the

EEOC charges, Plaintiffs failed to exhaust their administrative

remedies.  Title VII provides that a civil action may only be brought

in a United States District Court against "the respondent named in

the charge."   42 U.S.C. § 2000e-5(f)(1).   The purpose of this

requirement is twofold:  to provide notice to the charged party and

to permit the EEOC to attempt voluntary conciliation. <u>See Causey v.</u>

<u>Balog</u>, 162 F.3d 795, 800 (4th Cir. 1998) (citing <u>Alvarado v. Board of</u>

<u>Trustees of Montgomery Community College</u>, 848 F.2d 457, 460 (4th Cir.

1988)).  At the top of the EEOC charge form, there is a box to be

CIVIL NO. 98-2386 (JP)                17

filled out by the complainant, captioned: "Named is the employer, labor organization, employment agency, apprenticeship committee, state or local government agency who discriminated against me." Plaintiffs Maldonado, Lazo and Lázaro all identified "AT&T" in this box, and below that indicated AT&T-PR's address in Puerto Rico. In the body of the charge, Plaintiffs specified AT&T-PR as their employer, and also named co-Defendants Felipe, Luna and Figueroa as having taken part in the discriminatory acts described in the charge.

As a general matter, administrative complaints before the EEOC are to be construed liberally to further the underlying purposes of Title VII and because such complaints tend to be drafted by those unschooled in technical pleading. See Love v. Pullman, 404 U.S. 522, 527, 92 S. Ct. 616, 619, 30 L.Ed.2d 679 (1972) ("[T]echnicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process."); Shehadeh v. Chesapeake & Potomac Tel. Co. of Maryland, 595 F.2d 711, 727-29 (D.C. Cir. 1978). That principle is reflected in the Commission's regulations, which demand only "a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). Thus, naming a party in the narrative section of the charge, even if omitted in the caption, is sufficient to satisfy the charging requirement in 42

CIVIL NO. 98-2386 (JP)              18

U.S.C. § 2000e-5(f)(1) where the discrimination the party is alleged

to have engaged in is described with particularity. See Glickman v.

Neshaminy School Dist., No. Civ. A 96-6236, 1999 WL 58578, *6 (E.D.

Pa. Jan. 26, 1999); Pineda v. Almacenes Pitusa, Inc., 982 F. Supp.

88, 94 (D. Puerto Rico, 1997). Such a rule satisfies the purposes

of the naming requirement by providing notice to the charged party

and by identifying both the protagonists and the conduct complained

of, which permits the EEOC to promote voluntary compliance.

Because the Court has already held that Plaintiffs may not

proceed against individual defendants in their personal capacity, it

will only address the contention that AT&T-PR was not named in the

charge. The Court finds that AT&T-PR was sufficiently identified as

the respondent in the administrative complaints by virtue of the

caption listing the company's local address, and because the body of

the charge specified that it was addressed to the practices of AT&T

in Puerto Rico. Maldonado's charge describes the conduct of Felipe,

Luna and Figueroa which forms the basis of the complaint, indicates

that Felipe is the President of AT&T in Puerto Rico, and requests

"all available benefits allowed by law, including the ceasing and

desisting of the implemented reorganization, and the establishment

at AT&T of Puerto Rico of a respectful environment for the female

worker . . . ." (Defendants' Exh. 1). In Lazo's charge, she

CIVIL NO. 98-2386 (JP)                19

specifically indicates in the first sentence that she has worked at

"AT&T of Puerto Rico since 1988" and includes a request for relief

identical to Maldonado's, naming AT&T of Puerto Rico as the target

of that relief.   (Defendants' Exh. 2).   Finally, Lázaro's charge

notes that Felipe is the President of AT&T in Puerto Rico, and it is

clear from the narrative that the reorganization and complained of

took place under Felipe's direction.   (Defendants' Exh. 3).

Defendants cannot plausibly maintain that AT&T-PR was not named

in the administrative charge, save by asking the Court to engage in

rigid legal formalism and to hold Title VII plaintiffs to a

hypertechnical administrative pleading standard.   This the Court

refuses to do.   The Court therefore finds that Plaintiffs have

satisfied the naming requirement as to co-Defendant AT&T-PR and

**DENIES** co-Defendants' motion to dismiss on this basis.

### 2.    Exhaustion of sexual harassment / hostile work environment claims

The only claims of discrimination cognizable before this Court

are those that are "like or reasonably related to the substance of

charges timely brought before the EEOC." Briley v. Carlin, 172 F.3d

567, 572 (8th Cir. 1999) (quoting Williams v. Little Rock Mun. Water

Works, 21 F.3d 218, 222 (8th Cir. 1994)); see also Simms v. Oklahoma

ex rel. Dept. of Mental Health, 165 F.3d 1321 (10th Cir. 1999).   This

CIVIL NO. 98-2386 (JP)                    20

is a liberal standard, designed to carry out the remedial purposes of Title VII and to accommodate the lay persons who are depended on to enforce its provisions at the administrative level. See Babrocky, 773 F.2d at 864; Nichols v. American Nat. Ins. Co., 154 F.3d 875, 886-87 (8th Cir. 1998).

In their Motion, co-Defendants raise four instances in which Plaintiffs advance in their Complaint claims falling outside the scope of the EEOC charge. Co-Defendants first contend that Plaintiffs did not properly raise any allegations of sexual harassment or hostile work environment in the EEOC charges, and therefore are barred from raising these claims before the Court.

On the EEOC complaint form where complainants indicate the type of discrimination alleged, Plaintiffs each placed an "X" before the word "sex." In the body of the charge, each Plaintiff alleged she was the victim of a "hostile environment," but fails to set forth any specific facts or instances of conduct giving rise to a hostile work environment claim. Maldonado's charge, for example, only indicates that "I have been the victim of a hostile environment that is directly related to my condition as a woman and that also affects other female co-workers. Messrs. Luna (Director of Sales and Marketing) and Figueroa (Director of Human Resources) are the persons that promote and maintain hostile and discriminatory attitudes

CIVIL NO. 98-2386 (JP)              21

towards women." (Defendants' Exh. 1 (transl. ours)). The statement is set off in a separate paragraph, and nothing else in Maldonado's charge relates to sexual harassment or hostile work environment. The only other allegations made in the charge relate gender discrimination and retaliation. Lazo and Lázaro's charges contain a statement identical to Maldonado's conclusory statement cited above. (Defendants' Exh. 2, 3). The narrative following the statement in Lazo's charge, however, makes clear that when she alleges a hostile environment, she is referring to gender discrimination, not sexual harassment.

Plaintiffs, in their Opposition, surprisingly offer no arguments to the contrary. Naked allegations of a "hostile environment" in an EEOC charge, devoid of any details such as would put the respondents on notice that they were being charged with sexual harassment and as would give the EEOC the opportunity to investigate and conciliate, do not satisfy the exhaustion requirement under Title VII. Thus, the Court hereby **DISMISSES WITH PREJUDICE** Plaintiffs' sexual harassment and hostile work environment claims.

In light of the fact that the Court has dismissed Plaintiffs' federal sexual harassment claims, the Court declines to exercise its supplemental jurisdiction over the sexual harassment claims under Puerto Rico Laws 100, 69 and 17. See Rodríguez, 57 F.3d at 1177

CIVIL NO. 98-2386 (JP)                    22

("[T]he unfavorable disposition of a plaintiff's federal claims at
the early stages of a suit, well before the commencement of trial,
will trigger the dismissal without prejudice of any supplemental
state-law claims."). This dismissal does not, of course, preclude
Plaintiffs from pursuing these claims in state court. Plaintiffs'
sexual harassment claims under Puerto Rico laws 100, 69 and 17 are
hereby **DISMISSED WITHOUT PREJUDICE**.

### 3.    Exhaustion of retaliation claims

Second, co-Defendants argue that Maldonado and Lazo's claims for
retaliatory dismissal were raised for the first time in their
Complaint, and not in the administrative charges. The "like or
reasonably related" standard has been broadly construed to include
"most retaliatory acts [arising] subsequent to an EEOC filing."
Simms, 165 F.3d at 1327 (quoting Seymore v. Shawner & Sons, Inc., 111
F.3d 794, 799 (10th Cir.), cert. denied, __ U.S. __, 118 S. Ct. 342,
139 L.Ed.2d 266 (1997)); Malarkey v. Texaco, Inc., 983 F.2d 1204,
1209 (2d Cir. 1993); see also Anderson v. Block, 807 F.2d 145, 149
(8th Cir. 1986) (holding that retaliation claim was like or
reasonably related to administrative charge alleging sex
discrimination). If, however, the retaliatory act occurs prior to
the EEOC filing and the employee fails to allege retaliation in a
subsequent or amended charge, the retaliatory act ordinarily will not

CIVIL NO. 98-2386 (JP)                23

reasonably relate to the charge.  See Simms, 165 F.3d at 1327 (citing Seymore, 111 F.3d at 799).  In Seymore, the Tenth Circuit explained that this rule "obviates the need for filing repetitive complaints with the Equal Employment Opportunity Commission where the defendant engages in retaliatory acts after a complaint has been filed" with the EEOC.  Seymore, 111 F.3d at 799.  The Court further noted that such a rule is consistent with the purposes of the EEOC charge filing requirement -- to provide notice of the alleged violation to the charged party and provide the EEOC an opportunity to promote conciliation.  See id.

Maldonado and Lazo filed their administrative charges on November 21, 1997.  They were discharged on July 21, 1998, while the administrative process was still underway.  The EEOC issued right to sue letters to Maldonado and Lazo on November 9, 1998.  Plaintiffs state in a footnote of their Opposition, however, that Maldonado and Lazo have subsequently filed timely retaliation claims before the EEOC and UAD, and that right to sue letters have not yet been issued.  Because Plaintiffs have chosen to bring their retaliation claims before the EEOC and UAD, the Court will refrain from addressing these claims while the agencies are exercising jurisdiction over them.  The Court therefore **DISMISSES WITHOUT PREJUDICE** Maldonado and Lazo's retaliation claims.

CIVIL NO. 98-2386 (JP)          24

### 4.    Exhaustion of gender discrimination claims

Third, co-Defendants maintain that Plaintiffs have raised gender discrimination claims in the Complaint that were not raised in the EEOC charge and which occurred outside of the limitations period. Where an employment discrimination complaint is first filed with the appropriate state agency, as in this case, the administrative charge must be filed with the EEOC within 300 days of the alleged unlawful employment practice. See 42 U.S.C. § 2000e-5(e). Co-Defendants point out that Maldonado and Lazo filed their administrative charges with the EEOC on November 21, 1997, and that the 300-day limitation period would thus bar any claims for conduct occurring prior to February 25, 1997. Lázaro filed her administrative charge on November 18, 1997; the 300-day clock render time-barred any claims accruing before February 22, 1997. Co-Defendants therefore ask the Court to dismiss as time-barred claims arising before the 300-day limitation period.

Plaintiffs respond that they have alleged in the Complaint a serial violation, which is of a continuing nature and considered timely so long as at least one of the acts in the series takes place within the limitations period. See Jensen v. Frank, 912 F.2d 517, 522 (1st Cir. 1990); Mack v. Great Atlantic & Pac. Tea Co., 871 F.2d 179, 183 (1st Cir. 1989). A serial violation "is composed of a

CIVIL NO. 98-2386 (JP)          25

number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate wrong actionable under Title VII." DeNovellis v. Shalala, 124 F.3d 298, 307 (1st Cir. 1997) (quoting Jensen, 912 F.2d at 522). To make out a serial violation claim, the plaintiff must demonstrate a "series of related acts against a single individual [] -- an employee, say, is passed over several times for promotion, based on the same (actionable) animus." Jensen, 912 F.2d at 522; see also Thomas v. Eastman Kodak Co., 183 F.3d 38, 54 (1st Cir. 1999). Each discriminatory incident in effect "rewinds the clock." Mack, 871 F.2d at 183. To be timely, however, *some* discriminatory act must have transpired within the limitations period. Id.

Maldonado alleges in her Complaint a series of related acts against her in being denied promotions or opportunities for promotions in 1990, 1991, 1995, 1996 and 1997, on account of her gender. Maldonado's discriminatory denial of promotion claim has all the hallmarks of a serial violation. See Thomas v. Eastman Kodak Co., 183 F.3d 38, 54 (1st Cir. 1999) (noting that failure to promote cases often constitute a continuing violation). Moreover, her administrative charge specifies that the most recent incident occurred on July 14, 1997, when the position of Director of Sales and Marketing was filled by Richard Luna without providing Maldonado an

CIVIL NO. 98-2386 (JP)                26

opportunity to compete for the same.  Because the most recent denial

of a promotion takes place within the limitations period, and

Maldonado alleges an "interlinked succession of related events,"

Mack, 871 F.2d at 183, describing a series of incidents involving a

failure to promote, the Court finds that Maldonado's claim of failure

to promote is timely as part of a serial violation.  The Court

therefore **DENIES** co-Defendants' motion to dismiss Maldonado's gender-

based discrimination claims occurring prior to February 25, 1997.

Lazo alleges in the Complaint that she was required to interrupt

her maternity leave in 1994 and 1995, that she was denied a promotion

in 1994 on account of her gender, and that on five occasions, the

dates of which are unspecified, she was given new responsibilities

without corresponding salary increases.  (Compl. ¶¶ 21, 29, 34, 35).

The Complaint also states that Lazo was denied the opportunity to

apply for two promotions:  for the position of Director of Sales and

Marketing in 1997, and for the position of Marketing Director in

1998.  (Compl. ¶ 35).

Lazo's administrative charge, on the other hand, contains

allegations relating only to events in 1997, namely, the denial of

the opportunity to apply for a promotion to Director of Sales and

Marketing, and other events taking place after Luna assumed that

position in July 1997, such as the reorganization of the Sales and

CIVIL NO. 98-2386 (JP)            27

Marketing Department.  (Defendants' Exh. 2).  There is no obvious connection, though, between the events transpiring in 1994, relating to the interruption of Lazo's maternity leave, and the failure to promote in 1997 and 1998, sufficient to demonstrate that they constitute "a series of *related* acts." Jensen, 912 F.2d at 522 (emphasis added); see also Green v. Los Angeles County Superintendent of Schools, 883 F.2d 1472, 1480-81 (9th Cir. 1989) (to establish a serial violation the evidence must demonstrate that the "alleged discriminatory acts are related closely enough to constitute a continuing violation").  Accordingly, those claims are time-barred. With respect to the failure to promote in 1994 and again in 1997 and 1998, however, the Court finds that three instances of failure to promote are sufficiently interrelated to permit Lazo's failure to promote claim to proceed.  The Court therefore holds that Lazo has set forth a theory of a serial violation.  See Eastman Kodak, 183 F.3d at 54.

Turning to Lazo's claim of a serial violation for Defendants' failure to give her a salary raises on five occasions after Lazo assumed increased responsibilities, Plaintiff has not pointed to any event in that series that falls within the limitation period.  See Jensen, 912 F.2d at 522 ("[A] serial violation, to be actionable, requires the complaining party to demonstrate that *some*

CIVIL NO. 98-2386 (JP)          28

discriminatory act transpired within the limitation period.")
(emphasis in the original); Mack, 871 F.2d at 183; Cajigas v. Banco
de Ponce, 741 F.2d 464, 469-70 (1st Cir. 1984) (per curiam). Absent
allegations that at least one of the five occasions on which a salary
raise was not provided transpired during the limitation period, the
Court cannot consider the claims that were not alleged in the
administrative charge. Because the Court finds that Lazo has failed
to demonstrate that the events prior to February 22, 1997 formed part
of a serial violation, with the exception of the failure to promote
in 1994, the Court hereby **DISMISSES WITH PREJUDICE** all claims raised
by Lazo in her Complaint relating to gender discrimination arising
before February 22, 1997, save the 1994 failure to promote claim.

With respect to Lázaro, the Complaint states that in January
1992 she was passed over for a promotion, and that after complaining
about the incident to Figueroa, she was transferred from the
Marketing Department to the Sales Department. (Compl. ¶ 39). The
Complaint further asserts that after the August 1997 reorganization,
Lázaro was transferred from the Sales Department back to the
Marketing Department on account of her gender and suffered a
substantial loss of income as a result. (Compl. ¶ 59). Lázaro's
administrative charge contends that in March 1997, she was assigned
the responsibilities of two full-time positions, previously assigned

CIVIL NO. 98-2386 (JP)                29

to two men, without adequate compensation.  It further relates that
in August 1997, as a result of the Department of Sales and Marketing
reorganization, she was transferred to another division and suffered
adverse employment consequences as a result of the transfer.

It is unclear whether Lázaro is even claiming that the events
taking place in 1992, described in the Complaint, constituted gender
discrimination, since Lázaro's transfer to the Sales Department was
in effect a promotion.  In arguing that Lázaro has alleged a "linked
series of discriminatory acts," however, Plaintiffs' Opposition
lamely cites *only* this incident.  See Plaintiffs' Opposition, p. 13.
Because by definition, a serial violation "is composed of a number
of discriminatory acts," Lázaro has not established a serial
violation by alleging that just one act in 1992 comprises the entire
series.  DeNovellis, 124 F.3d at 307; Jensen, 912 F.2d at 522; see
also Mack, 871 F.2d at 183.  As a consequence, the events in the
Complaint taking place before February 22, 1997 are time-barred.  The
Court therefore **DISMISSES WITH PREJUDICE** all gender discrimination
claims in Lázaro's Complaint arising before February 22, 1997.

### 5.  Exhaustion of pregnancy discrimination claims

Finally, co-Defendants allege that Plaintiffs did not raise any
pregnancy discrimination claims in the administrative charges.  In
her EEOC charge, Maldonado notes that she was denied an opportunity

CIVIL NO. 98-2386 (JP)                    30

to apply for a promotion to a position for which she was qualified while she was on maternity leave from April to August 1997. (Defendants' Exh. 1). Neither Lazo nor Lázaro, however, made any mention of discrimination based on pregnancy in their administrative charges. Accordingly, the Court **DENIES** co-Defendants' motion as to Maldonado's pregnancy claim, but **DISMISSES WITH PREJUDICE** Lazo and Lázaro's pregnancy discrimination claims.

   **E.    Plaintiffs' Equal Pay Act Claims**

   The Equal Pay Act provides that no employer shall discriminate between employees "at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). To make out a prima facie face, a plaintiff must establish that "the employer paid different wages to an employee of the opposite sex for substantially equal work." Byrd v. Ronayne, 61 F.3d 1026, 1033 (1st Cir. 1995). To make this showing, the plaintiff must prove that "'(i)  the employer pays different wages to employees of the opposite sex; (ii)  the employees . . . perform equal work on jobs requiring equal skill, effort, responsibility; and (iii)  the jobs are performed under similar working conditions.'" Rodríguez v. Smithkline Beecham Pharm., Puerto

Rico, Inc., Civ. No. 98-1649, 1999 WL 507207, *7 (D. Puerto Rico)

(Pieras, J.) (quoting Mullenix v. Forsyth Dental Infirmary for

Children, 965 F. Supp. 120, 139 (D. Mass. 1996)).

     Plaintiffs have alleged in the Complaint a prima facie case for

an Equal Pay Act violation.  The Complaint states that "Maldonado-

Cordero and Lazo-Macías were continuously subjected to lower salary

grades and actual salaries than male co-workers performing identical

or similar work." (Compl. ¶ 77).  It further states that "Lázaro-

Vicéns was continuously and continues to be subjected to lower salary

grades and actual salaries than male co-workers performing identical

or similar work." (Compl. ¶ 78).  Because Plaintiffs have set forth

the elements of a prima facie case under the Equal Pay Act

sufficiently to withstand a motion to dismiss, the Court hereby

**DENIES** co-Defendants' motion to dismiss Plaintiffs' Equal Pay Act

claims.

     **F.    Plaintiffs' Puerto Rico Law Claims**

     Defendants argue that the Court should decline to exercise

supplemental jurisdiction over Plaintiffs' Puerto Rico law claims.

In 1990, Congress enacted 28 U.S.C. § 1367, which provides that "in

any civil action over which the district courts have original

jurisdiction, the district courts shall have supplemental

jurisdiction over all other claims that are so related to claims in

CIVIL NO. 98-2386 (JP)              32

the action . . . that they form part of the same case and controversy." 28 U.S.C. § 1367 (1994). This statute essentially codifies the U.S. Supreme Court's analysis in <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966). In <u>Gibbs</u>, the Court enumerated several factors to be considered by a court in exercising supplemental jurisdiction: (1) whether considerations of judicial economy, convenience, and fairness to the litigants are present; (2) whether the state law issues are clearly resolved on the state level; (3) whether state issues predominate in terms of proof, scope of issues or comprehensiveness of remedies; and (4) whether the divergence of state and federal issues is likely to create jury confusion. <u>See id.</u> at 726-27.

Plaintiffs argue that section 1367 mandates that a district court exercise supplemental jurisdiction where the federal and states law claims derive from a "common nucleus of operative fact." <u>Rodríguez v. Doral Mortgage Corp.</u>, 57 F.3d 1168, 1175 (1st Cir. 1995). <u>Rodríguez</u> addressed the power of the district court to exercise supplemental jurisdiction over a Puerto Rico Law 17 claim where plaintiffs' federal claim arose under Title VII. Contrary to Plaintiffs' suggestion, however, the First Circuit did not hold that the district court's exercise of supplemental jurisdiction was mandatory. Rather, the <u>Rodríguez</u> Court only found that it was within

CIVIL NO. 98-2386 (JP)                    33

the powers of the district court to hear the Law 17 claim. See id. at 1176 ("[T]he court below plainly possessed the raw power to exercise supplemental jurisdiction over a claim under Puerto Rico Law 17 . . . ."). Nonetheless, the Court did note that "the relationship between plaintiff's Title VII claim and her [] claim under Law 17 matches the *Gibbs* Court's description in all significant respects," because both were civil rights claims deriving from common facts, such that both would ordinarily be heard together in a single trial. Id.

     Plaintiffs also point to Vera-Lozano v. International Broadcasting, 50 F.3d 67 (1ˢᵗ Cir. 1995), for the proposition that the Court should try the Title VII and Puerto Rico law claims together despite different standards of proof. The First Circuit noted that the district court has "broad discretion" to exercise supplemental jurisdiction. See id. at 70. The court found that Vera-Lozano's Puerto Rico law claims that derived from the same nucleus of operative fact as the Title VII claims did not predominate, and that joint adjudication furthered the interests of judicial economy and fairness. See id.

     The Court agrees that Plaintiffs' Title VII claims and Puerto Rico law claims derive from a common nucleus of operative fact, and therefore would ordinarily be heard together in a single trial.

CIVIL NO. 98-2386 (JP)             34

Under the factors set forth in Gibbs, the Court finds that
considerations of judicial economy, convenience, and fairness to the
litigants press strongly in favor of the exercise of supplemental
jurisdiction.  Co-Defendants point to no novel issue of state law as
to the remaining Puerto Rico law claims.  And although there are
different standards of proof, the decision in Vera-Lozano illustrates
that the district court has not found this difference to be so
significant as to overcome the desire for fairness to the litigants
and judicial efficiency.  See Vera-Lozano, 50 F.3d at 70.  The Court,
therefore, hereby **DENIES** co-Defendants' motion to dismiss Plaintiffs'
Puerto Rico law claims.

## III. Conclusion

The Court hereby enters **JUDGMENT**, **DISMISSING** the following
claims **WITHOUT PREJUDICE**: (1) Plaintiffs Lilliam Maldonado-Cordero,
María M. Lazo-Macías and Carmen H. Lázaro-Vicens' sexual harassment
and hostile work environment claims under Puerto Rico Law 100, P.R.
Laws Ann. tit. 29 § 146, Law 69, P.R. Laws Ann. tit. 29 § 1321, and
Law 17, P.R. Laws Ann. tit. 29 §§ 155-1551; and (2) Plaintiffs
Maldonado and Lazo's retaliation claims under Title VII of the Civil
Rights Act of 1964.  The following claims are **DISMISSED WITH
PREJUDICE**: (1) Plaintiffs Lilliam Maldonado-Cordero, María M. Lazo-
Macías and Carmen H. Lázaro-Vicens' sexual harassment and hostile

CIVIL NO. 98-2386 (JP)                35

work environment claims under Title VII of the Civil Rights Act of 1964, §§ 2000e - 2000e-15; (2) Plaintiffs Maldonado, Lazo and Lázaro's Title VII claims and Puerto Rico law claims against the individual Defendants Richard Luna and Luis Figueroa in their personal capacities; (3) Plaintiff Lazo's Title VII claims accruing prior to February 25, 1997, including claims for pregnancy discrimination and discriminatory denial of salary increases; and (4) Plaintiff Lázaro's Title VII claims accruing prior to February 22, 1997, including claims for pregnancy discrimination and failure to promote.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this *1st* day of *Nov* , 1999.

JAIME PIERAS, JR.
U.S. SENIOR DISTRICT JUDGE